IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN WICAL,

      **Plaintiff,**

vs.                                        Civil Action 2:03-CV-181

                                          Magistrate Judge King

**INTERNATIONAL PAPER LONG-TERM
DISABILITY PLAN,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff initiated this action under the Employees Retirement Income Security Act of 1974 [hereinafter "ERISA"], 29 U.S.C. § 1132, alleging that benefits under his employer's long-term disability plan were improperly terminated. Plaintiff also alleges that, as a consequence, his medical, dental and life insurance coverage was also terminated. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the motions of the parties for judgment on the administrative record. Doc. Nos. 40 and 41.

**I. Background**

Plaintiff was an employee of International Paper Company [hereinafter "International Paper"]. *Complaint,* at ¶ 1. Defendant, International Paper Long-Term Disability Plan [hereinafter " LTD Plan"], is an employee benefit plan established and maintained by International Paper

pursuant to ERISA. *Id.,* at ¶ 2.

Plaintiff began his employment with International Paper in 1980. *Id.,* at ¶ 5. Plaintiff held various positions with International Paper, including machine operator, through June 2, 1997. *Id.*; *Administrative Record,* at Wical 0443. Plaintiff believes that, at some point during his employment, he sustained work related injuries that now qualify him for long-term disability benefits. *Administrative Record,* at Wical 0030-0031. In particular, Plaintiff alleges that he suffers from "[d]egenerative disc disease, nerve damage, arthritis of spine, chronic pain, hardening arteries, high cholesterol, and pain in shoulder, knee and scrotum." *Administrative Record,* at Wical 0441. *See also Complaint,* at ¶ 7.

As an International Paper employee, Plaintiff was eligible to participate in the LTD Plan. *Administrative Record,* at LTD Plan 0001-0013. With respect to long-term disability benefits, the LTD Plan provides that, if a participant's "disability continues beyond the maximum period under the Salary Continuance Plan and [the participant is] totally disabled and cannot perform the duties of [the participant's] job, [the participant] may be eligible for benefits under the Long-Term Disability (LTD) Plan." *Id.,* at LTD Plan 0005. To be eligible for LTD Plan benefits, a participant must meet the LTD Plan's definition of total disability:

> **Totally Disabled**- for the first 24 months, when you are unable to perform the duties of your job and you are under the regular care of a licensed physician; thereafter, when you cannot perform any occupation or employment for which you are qualified by education, training or experience and you are under the regular care of a licensed physician.

*Id*.

The LTD Plan provides that, in order to receive benefits, an employee must submit to the Plan's administrator an appropriate claim form and supporting documentation. *Id.,* at Plan 007. The

2

LTD Plan then contemplates a three step review process. The claims administrator, *i.e.,* Wausau Benefits Inc. [hereinafter "Wausau"] will render an initial decision with respect to benefits. *Id.,* at Plan 007. If the claim for benefits is denied, the employee may request that Wausau review the denial. *Id.,* at Plan 0010. If the denial is upheld, the employee may request, in writing, review by the Plan Administrator, *i.e.,* Senior Vice President of Human Resources, International Paper. *Id.,* at Plan 0009-0010. The Plan administrator will render a final administrative decision based on the administrative record. *Id.,* at Plan 0010.

On October 6, 1997, Plaintiff applied for long-term disability benefits based on: "[d]egenerative disc disease, nerve damage, arthritis of spine, chronic pain, hardening arteries, high cholesterol, and pain in shoulder, knee and scrotum." *Administrative Record,* at Wical 0441. On December 10, 1997, Plaintiff was notified that his application for disability benefits had been approved, effective December 1, 1997. *Complaint,* at ¶ 8; *Administrative Record,* at Wical 0412-0414. Plaintiff also applied for Social Security disability benefits, which were granted in October 1998. *Administrative Record,* at Wical 0394. On May 4, 1999, Plaintiff was advised that International Paper would require periodic updates and that, at the end of the initial 24 month period, *i.e.,* November 30, 1999, Plaintiff would be required to establish that he cannot perform any occupation in order to satisfy the LTD Plan definition of total disability. *Id.,* at Wical 0381.

After the expiration of the initial 24 month period on November 31, 1999, Plaintiff maintained that he was "totally disabled" as that term is defined under the LTD Plan. However, on December 8, 1999, Dr. Steven Kolodzik, Plaintiff's treating physician, completed a Functional Capacity Form in which he indicated that Plaintiff would be unable to return to his former job, but could return to other work with certain restrictions. *Administrative Record,* at Wical 0328-0329.

3

Later, in August 2000, Dr. Kolodzik indicated that he did not believe that Plaintiff could return to work even in a different occupation. *Id.,* at Wical 0227. Additionally, Dr. Kolodzik has testified that Plaintiff is unemployable in any capacity. *Affidavit of Stephen N. Kolodzik, M.D.,* at ¶ 6.

On June 4, 2001, Wausau commissioned an orthopedic surgeon, Michael Weiss, M.D., to conduct an independent review of Plaintiff's claim for disability benefits. *Administrative Record,* at Wical 0296-0297. Dr. Weiss reviewed a referral form and clinical data provided by Wausau and also spoke with Dr. Kolodzik. *Id.,* at Wical 0294-0295. Dr. Weiss noted symptoms of GERD, anxiety, depression and a diagnosis of severe degenerative disc disease, but concluded that Plaintiff was "neurologically intact and would be able to work sedentary duty with the ability to change position as needed." *Id.* However, noting Dr. Kolodzik's opinion of disability, Dr. Weiss recommended another independent medical examination [hereinafter "IME"]. *Id.*

On August 20, 2001, and consistent with Dr. Weiss' suggestion, Timothy Fallon, M.D., conducted an IME of Plaintiff. *Id.,* at Wical 0030-0034. After reviewing Plaintiff's medical history and examining Plaintiff, Dr. Fallon concluded:

> [T]his is an individual who has a long history of back pain, dating back at least twenty years. He has some discogenic abnormalities in the low back with disk protrusions. He does not present at this time with evidence of a radicular component. Given his low back condition at this time, one would arbitrarily place some restrictions on his physical activities and this would place him in the medium work capacity. I do not feel he is totally disabled from any occupation.

*Id.,* at Wical 0033-0034. Dr. Fallon recommended further assessment of Plaintiff's job skills. *Id.,* at Wical 0034.

On January 9, 2002, Vocational Consultant William Hyde, Ph.D., conducted a vocational

4

assessment of Plaintiff. *Id.,* at Wical 0056-0059. Dr. Hyde noted Plaintiff's current medical status[1] and reviewed Plaintiff's educational and vocational background and concluded that Plaintiff is employable in the local economy. *Id.*

On March 6, 2002, Wausau notified Plaintiff that, effective April 30, 2002, he was no longer eligible for LTD benefits. *Complaint,* at ¶ 12; *Administrative Record,* at Wical 0008-0009. Wausau specifically indicated that, based upon the reports and opinions of Drs. Fallon, Hyde, Kolodzik and Reno, Plaintiff was employable in the local economy and therefore failed to meet the LTD Plan's definition of total disability. *Id.*

Plaintiff sought review of Wausau's initial denial of benefits, *Id.,* at Wical 0138, and, on June 4, 2002, Plaintiff commissioned an employability assessment by Caroline Wolfe. *Id.,* at Wical 0110-0114. In addition to interviewing Plaintiff, Ms. Wolfe also reviewed medical records from Dr. Kolodzik, a neurological and EMG report from Brian P. Fahey, D.O., a psychological evaluation performed in 1998 and the award of Social Security disability benefits. *Id.,* at Wical 0110-0114. Ms. Wolfe concluded that there are no jobs that exist in significant numbers in Ohio that Plaintiff can perform. *Id.,* at Wical 0113.

On June 28, 2002, Wausau commissioned an orthopedic review by Daniel Kharrazi, M.D. *Id.,* at Wical 0038-0040. It appears that Dr. Kharrazi reviewed information provided by Plaintiff's physicians, MRI and EMG findings, Ms. Wolfe's employability assessment and Dr. Fallon's IME. *Id.* Dr. Kharrazi noted that the medical information provided by Dr. Kolodzik and Dr. Reno appeared to contain very few objective findings. *Id.*, at Wical 0038. Additionally, Dr. Kharrazi noted that the objective findings, including the IME by Dr. Fallon and the MRI and EMG results,

---

[1] With respect to medical status, Dr. Hyde relied primarily on the IME of Dr. Fallon. *Administrative Record,* at Wical 0059.

5

do not support Ms. Wolfe's employability assessment. *Id.,* at Wical 0040. Dr. Kharrazi then opined that, while Plaintiff would be expected to have functional limitations, he is not totally disabled. *Id.,* at Wical 0038.

On July 22, 2002, Wausau upheld the initial termination of benefits. *Complaint,* at ¶ 14; *Administrative Record,* at Wical 0012-0014. Wausau specifically noted that Dr. Fallon's IME indicated that Plaintiff is capable of performing medium work and that Dr. Hyde indicated that Plaintiff was employable in the local economy. *Id.,* at Wical 0012. Wausau then noted that, while the information submitted by Plaintiff, *i.e.,* medical records from Dr. Kolodzik and Ms. Wolfe's employability assessment, suggest total disability, an independent review of those documents revealed that Plaintiff was not in fact totally disabled. *Id.,* at Wical 0013. Wausau then informed Plaintiff, "In order to perfect this claim for benefits ... you would have to furnish us with information showing objective medical findings supporting Mr. Wical's total disability from any occupation." *Id.*

On January 15, 2003, Plaintiff sought review of this determination, but submitted no additional information or evidence. On February 4, 2003, Defendant affirmed the earlier administrative decision. *Complaint,* at ¶ 16; *Administrative Record,* at Wical 0001-0002. Specifically, Defendant noted the basis for Wausau's earlier decision and then concluded, "Since you did not include any additional medical information ... we find no basis to reverse Wausau Benefits' determination that Mr. Wical no longer meets the Plan definition of totally disabled." *Id.,* at Wical 0002. On February 27, 2003, Plaintiff filed a Complaint in this Court alleging that Defendant unlawfully denied his claim for benefits. Doc. No. 1.

On May 4, 2004, this Court granted in part Plaintiff's motion for summary judgment and

remanded this case to the Plan Administrator for further review of the administrative record. *Opinion and Order* (May 4, 2004), Doc. No. 27. Specifically, this Court rejected Plaintiff's arguments that the Plan administrator acted arbitrarily and/or capriciously by failing to give more weight to the opinions of his treating physicians and by failing to take into consideration his depression and use of pain medication. *Id.,* at pp. 9-12. However, this Court held that, because there was no indication that the Plan Administrator considered the Social Security Administration's October 13, 1998, "Notice of Award" letter, which was included as part of the administrative record, the matter would be remanded for further review. *Id.,* at pp. 13-14.

On July 26, 2004, Plaintiff submitted to the LTD Plan Plaintiff's complete Social Security file, including the medical records upon which the Social Security decision was based. *See* Supplemental Administrative Record, Wical S0002, Doc. No. 39. On September 28, 2004, after reviewing the "Notice of Award" letter and file materials submitted by Plaintiff upon remand, the Plan Administrator determined that none of the materials submitted by Plaintiff entitled Plaintiff to benefits under the LTD Plan. *Id.,* Wical S0001. Plaintiff seeks review of this decision.

## II.     Judgment on the Administrative Record

### A.     Standard of Review

In a prior *Opinion and Order*, this Court held that the Plan Administrator's decision to deny Plaintiff long term disability benefits must be reviewed under an arbitrary and capricious standard. *Opinion and Order* (May 4, 2004), Doc. No. 27. Plaintiff asks this Court to reconsider that decision based upon the nature of the Plan Administrator's position on remand. Following remand, the Plan Administrator explained that, while it reviewed the Social Security file materials provided by

Plaintiff after remand, it had no obligation to review those materials because they were not part of the original administrative record.[2] *Supplemental Administrative Record*, at Wical S0001. Plaintiff argues that this language suggests that the Administrator has abandoned its role as a fiduciary and is acting instead as an advocate. This Court disagrees. In this Court's May 4, 2004 remand order, the Plan Administrator was directed to further review the administrative record, including consideration of the Social Security Administration's October 1998 "Notice of Award" letter, which was part of the original administrative record. Doc. No. 27. This Court did not direct the Plan Administrator to review any additional materials, including the underlying materials supporting the award of Social Security benefits, which were subsequently submitted by Plaintiff upon remand. *See Opinion and Order*, p. 9, Doc. No. 33. Consequently, Plaintiff's objection is without merit. Furthermore, despite the Plan Administrator's belief that it was not obligated to review materials not included in the original administrative record, the Plan Administrator nevertheless reviewed both the Social Security Administration's "Notice of Award" letter, as directed by the Court, and the Social Security file materials subsequently submitted by Plaintiff.

For this reason, the Plan Administrator's decision will be reviewed under the arbitrary and capricious standard. This standard is the least demanding standard of review of an administrative action. *Davis v. Kentucky Finance Companies Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied,* 495 U.S. 905 (1990). Under this standard, a court will uphold a plan administrator's decision unless it is unreasonable. *Dalesandro v. International Paper Co.,* 214 F.R.D. 473, 479 (S.D. Ohio 2003) (citing *Shelby County Health Care Corp. v. Southern Council of Ind. Workers*

---

[2]"Because [Plaintiff] failed to submit [the social security file] materials to the Plan, the Plan believes it has no obligation to review them now. However, despite having no obligation to do so, we have reviewed that information as well as the Social Security Administration's October 13, 1998, Notice of Award." *Supplemental Administrative Record*, at Wical SR 0001.

*Health & Welfare Trust Fund,* 203 F.3d 926, 933 (6th Cir. 2000)). Thus, Defendant's decision will be upheld if it is possible to offer a reasoned explanation, based on the evidence, for that decision. *See Davis,* 887 F.2d at 693.

### B. Application

Upon remand, the Plan Administrator determined that neither the Social Security Administration's "Notice of Award" letter, nor the Social Security file materials, entitled Plaintiff to benefits pursuant to the LTD Plan. *Supplemental Administrative Record*, at Wical S0001. Plaintiff contends that this decision was arbitrary and capricious. In making its determination, the Plan Administrator relied on current medical information, including recent independent medical examinations conducted by both Drs. Weiss and Fallon, a recent employability assessment conducted by Dr. Hyde and recent peer review reports. *Supplemental Administrative Record*, at Wical S0001. The Plan Administrator also relied upon the opinion of Dr. Kharrazi who conducted an orthopedic evaluation in June, 2002. Each of these medical professionals concluded that Plaintiff was not totally disabled from all occupations.[3]

Furthermore, the medical information upon which the Plan Administrator relied was significantly more recent than that underlying the Social Security Administration's October 13,

---

[3] In his July 12, 2001, opinion, Dr. Weiss explained that Plaintiff was "neurologically intact and would be able to work at least sedentary duty with the ability to change position as needed." *Administrative Record,* at Wical 0294-95.

In his August 20, 2001, opinion, Dr. Fallon explained that Plaintiff was not totally disabled from any occupation and could work "in a medium work capacity." *Id.,* at Wical 0030-35.

On February 19, 2002, Dr. Hyde conducted an employability assessment in which he concluded that, based on this interview of Plaintiff and his review of Plaintiff's medical records, Plaintiff was "employable in the local economy." *Id.,* at Wical 0056-59.

On July 10, 2002, Dr. Kharrazi conducted an independent medical review in which he opined that Plaintiff was not totally and permanently disabled. *Id.,* at 0025-27.

1998, "Notice of Award" letter and the 1998 Social Security file materials submitted by Plaintiff upon remand.[4] In the Plan Administrator's view, the medical reports and opinions issued between 2001 and 2002 were significantly more reliable than were the medical records upon which the Social Security Administration relied in 1998. While a Social Security Administration decision is a "factor in determining whether a plan administrator's decision denying disability benefits was arbitrary and capricious," the grant of Social Security disability benefits does not bind a plan administrator. *See Hurse v. Hartford Life and Accident Ins. Co.,* (unreported) 2003 WL 22233532 (6th Cir. 2003); *Willis v. ITT Educ. Serv., Inc.*, 254 F. Supp. 2d 926, 944 (S.D. Ohio 2003); *Calvert v. Firstar Finance, Inc.,* 266 F. Supp. 2d 578, 585 (W.D. Ky. 2003). Upon remand, the Plan Administrator was merely required to "consider" the award of Social Security benefits to Plaintiff. *Opinion and Order* (May 4, 2004), p. 14, Doc. No. 27.

Furthermore, courts should not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003). This Court has previously held that the opinion of Plaintiff's treating physician is not dispositive and that the Plan Administrator did not err by relying instead on other credible evidence in the administrative record. *See Opinion and Order,* Doc. No. 27. Here, Defendant relied upon a number of credible medical opinions and reports that indicated that Plaintiff was not permanently disabled within the plan's definition. The Plan Administrator acted within its discretion in concluding that "the information on which the Plan relied was more current and a better indicator of [Plaintiff's] medical status" than the Social Security file materials provided by Plaintiff upon remand. *Supplemental Administrative Record*, at Wical

---

[4] The medical records that the Plan Administrator relied upon were 4-5 years more recent than the medical records included in Plaintiff's Social Security file.

10

S0001.  Thus, the Plan Administrator's denial of Plaintiff's claim for continuing benefits was not arbitrary and capricious, or otherwise an abuse of discretion.

**WHEREUPON**, Defendant's motion for judgment on the administrative record, Doc. No. 40, is **GRANTED**, and Plaintiff's motion for judgment on the administrative record, Doc. No. 41, is **DENIED**.

The Clerk shall enter **FINAL JUDGMENT** in this action.


<u>April 20, 2005</u>                               <u>    *s/ Norah McCann King*    </u>
                                                             Norah M<sup>c</sup>Cann King
                                                             United States Magistrate Judge